**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BLING MIRROR LLC,<br><br>     Plaintiff,<br><br>v.<br><br>GUANGZHOU SHENGYANG LEATHER GOODS CO., LTD. d/b/a SYBAG and GUANGZHOU FEIZHULIU LEATHER GOODS CO., LTD. d/b/a FESHINE<br><br>     Defendants. | Case No. 1:25-cv-10024<br><br>District Judge Elaine E. Bucklo<br><br>Magistrate Judge Daniel P. McLaughlin<br><br><br>**JURY TRIAL DEMANDED** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND EXPEDITED DISCOVERY**

Plaintiff Bling Mirror submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order and Expedited Discovery. As set forth herein, and in the supporting declarations, *ex parte* treatment is justified in view of Defendants' efforts to conceal their identity to evade traditional enforcement efforts.

### I.    Introduction

Plaintiff is requesting temporary *ex parte* relief based on an action for patent infringement and unfair competition. As alleged in Plaintiff's Complaint, Defendants are promoting, advertising, marketing, distributing, importing/exporting, offering for sale, and/or selling products that infringe upon Plaintiff's U.S. Patent (the "Infringing Products") through at least three known Seller Aliases operating through the Amazon.com and Walmart.com marketplaces.

Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores using their Seller Aliases through which Illinois residents can purchase the Infringing Products. As outlined below, Defendants attempt to avoid liability by operating under Seller

1

Aliases while providing incomplete or difficult to access contact information to conceal their identities and the full scope and interworking of their operation. Plaintiff is thus forced to file this action to combat Defendants' infringement of Plaintiff's Patent, to prevent further unfair methods of competition of Defendants, and to protect unknowing consumers from purchasing Infringing Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests this Court issue an *ex parte* Temporary Restraining Order.

**II.      Defendants Are Properly Joined Under Rule 20 And 35 U.S.C. §299**

Rule 20 addresses permissive joinder states that multiple defendants may be joined in a single action if A) right to relief is asserted against the defendants jointly, severally, or with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and B) there is a question of law or fact common to all defendants. Fed. R. Civ. P. 20(a)(2). 35 U.S.C. § 299 more particularly addresses joinder in patent cases and states that accused infringers may be joined together if 1) any right to relief is asserted against them jointly, severally, or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product; and 2) there are common questions of law or fact regarding the accused infringers.

This case satisfies both Rule 20 and § 299. First, as alleged in Plaintiff's Complaint, there is reason to believe that Defendants are commonly owned, related, or even alter egos of each other. *See* Dkt. 1, ¶¶ 10-25. The SYBAG and Feshine Storefronts only sell "Hasipu" and "Batuso" branded products (primarily mirrors, but also other related products such as shower doors); the Hasipu and Batuso trademarks owned by Defendants were filed on the same day and by the same attorney; and the addresses listed on the USPTO records for the Hasipu and Batuso trademarks are the same addresses listed for the SYBAG and Feshine Seller Aliases on Amazon after translating

2

from Chinese to English. *Id.* Thus, it is reasonable to infer – at least at this introductory stage – that Defendants are related, commonly owned, or even alter egos of each other. Consequently, they are jointly liable for the infringement alleged in the Complaint.

Alternatively, even assuming Defendants are not related corporate entities, they are nevertheless related infringers through a series of transactions or occurrences relating to the making, using, importing, offering for sale, and selling of the same accused products. Specifically, Defendant Guangzhou Feizhuliu Leather Goods Co., Ltd. ("Feizhuliu") is alleged to be the manufacturer or source of the Infringing Products sold under the Hasipu brand. *Id.* at ¶¶ 17, 28. Consequently, Feizhuliu is responsible for making, using, or importing the Infringing Products into the United States. Those same products are then sold by Defendant Guangzhou Shengyang Leather Goods Co., Ltd. ("Shengyang ") through at least its SYBAG Seller Alias. Put another way, there is a common series of transactions or occurrences relating to the same Infringing Products.

*In re Nintendo Co*. 544 Fed. Appx. 934 (Fed. Cir. 2013) is controlling on these facts. In *Nintendo*, the Federal Circuit reviewed an order from the Eastern District of Texas that found joinder proper between Nintendo of America, Inc. and various retailers who sold Nintendo products. *Id*. at 935. On appeal, the Federal Circuit agreed that joinder was proper but remanded for consideration whether discretionary severance was nevertheless appropriate under the circumstances. *Id*. at 939 ("Given the permissive nature of the applicable rules, we have characterized these requirements [joinder under Rule 20 and 35 U.S.C. § 299] as necessary, but not sufficient, conditions for joinder") (citing *EMC* 677 F.3d at 1355). In other words, the Federal Circuit held that the original source of the accused products (Nintendo of America) and multiple retail sellers of the products are all properly joined together under Rule 20 and 35 U.S.C. § 299. That is precisely the situation of this case.

3

### III.  *Ex Parte* Treatment is Appropriate

Turning now to Plaintiff's request for an *ex parte* restraining order. Plaintiff is the lawful owner by assignment of all right, title, and interest to the asserted Patent. *See* Dkt. 1 at ¶ 5. Plaintiff sells embodying products, through licensees and direct-to-consumer through its website. *Id*. at ¶ 8. The Asserted Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35 U.S.C. § 282. *Id*. at ¶ 7.

Defendants are believed to be foreign entities importing infringing goods into the United States for sale on third-party marketplaces. Moreover, Defendants attempt to hide their infringement or at least their identities by providing incomplete or difficult to discover contact information. For example, Feizhuliu's Feshine Walmart store lists its address as merely guangzhoushi huaduqu guangzhoushi, GD 510800, CN. This translates to the Huadu District of Guangzhou in Guangdong, China. This would be the equivalent of saying, for example, Theater District, Chicago, IL or Uptown, New York, NY. The Amazon marketplace requires somewhat more detailed contact information, but does not require that the information be in English. Consequently, Feizhuliu lists its contact as:

狮岭镇合成村自编岭南商业三街75号铺1、2
**广州市**
**花都区**
**广东省**
510800
CN

Defendant Shengyang similarly lists its contact for its Amazon Seller Alias SYBAG in Chinese. As evidenced by Defendants' filings with the USPTO, they are capable of listing their business names and addresses in English when required to do so. The only reason to list addresses

in Chinese, and at times incomplete, and provide business names in transliterations[1] is so that Defendants can obscure their identities. Plaintiff believes, and alleges, that Defendants obscure their identities to evade enforcement efforts by U.S. intellectual property holders (and likely consumers who might complain about Defendants' products under various torts). Quite simply, if a complainant cannot find or contact Defendants, then Defendants cannot be put on notice regarding the claim and, absent *ex parte* treatment, can never be brought to answer the allegations or enjoined by a court. Consequently, Plaintiff has not provided notice to Defendants. *See* Exhibit A (declaration of counsel pursuant to Fed. R. Civ. P. 65(b)(1)(B)).

## IV.    An Injunction Should Be Entered

Defendants' conduct is causing and, unless enjoined, will continue to cause irreparable harm to Plaintiff, including loss of current and future sales, market share, reputation, and goodwill. To stop this irreparable harm, Plaintiff respectfully requests that this Court issue a temporary restraining order and, following any necessary hearing, a preliminary injunction ordering, among other things, the immediate cessation of sales of the Infringing Products and a cessation of advertisements for the Infringing Products. Without the relief requested by this Motion, Defendants' unlawful activity will continue unabated, and Plaintiff will continue to suffer irreparable injury for which there is no adequate remedy at law.

### A. Applicable Standards

Courts have the discretion to issue an injunction to "prevent the violation of any rights secured by patent." 35 U.S.C. § 283[2]. The right to exclude others is among the most valuable

---

[1] Plaintiff has referred to Defendants' names as transliterations. Specifically, they appear to be Pinyin romanization of the Chinese characters of Defendant's names to provide a phonetic romanization of the Chinese words. *See e.g.*, https://en.wikipedia.org/wiki/Pinyin

[2] Regarding the applicable standard, a preliminary injunction enjoining patent infringement pursuant to 35 U.S.C. § 283 "involves substantive matters unique to patent law and, therefore, is governed by the law of [the Federal Circuit]." *Revision Military, v. Balboa Mfg. Co*., 700 F.3d

rights – if not the most valuable right – secured by a patent grant. *See Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("Indeed, the encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude") (internal citations omitted). A preliminary injunction preserves the status quo by preventing future infringement pending a determination on the merits. *Abbott Labs. v. Sandoz*, 544 F.3d 1341, 1344-45 (Fed. Cir. 2008) (citing *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

Generally, the party seeking an injunction must show that: (1) the movant is likely to succeed on the merits; (2) irreparable harm will result if the relief is not granted; (3) the balance of hardships to the parties weighs in the movant's favor; and (4) the public interest is best served by granting the injunctive relief. *See Titan Tire Corp. v. Case New Holland*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Abbott Labs v. Sandoz, Inc.*, 500 F. Supp. 2d 807, 815-16 (N.D. Ill. 2007) (citing *Polymer Techs., v. Bridwell*, 103 F.3d 970, 973 (Fed. Cir. (1996)).

Infringement of a utility patent "involves a two-step process: (1) 'the court determines the scope and meaning of the asserted claims'; and (2) 'the properly construed claims are compared to the allegedly infringing device.'" *Edge Sys. LLC v. Aguila*, 635 Fed. Appx. 897, 902 (Fed. Cir. 2015) (quoting *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998)). Plaintiff need only show a likelihood of infringement of one or more claims of the asserted patent to show a likelihood of success. *Id.*

While "[u]nfair competition originally was an extension of trademark law," the Supreme Court case *International News Service v. Associated Press*, "expanded the parameters of unfair

---

524, 525 (Fed. Cir. 2012) (quoting *Hybritech v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988)).

competition beyond 'palming off' by refusing to 'concede that the right of equitable relief is confined to [trademark] class of cases,' although those cases were still the most common." *Wilson v. Electro Marine Sys.*, 915 F.2d 1110, 1118 (7th Cir. Oct. 4, 1990) (*quoting* 248 U.S. 215, 241-242 (1918)). Some courts have interpreted this to mean that the "'essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another. . . . Central to this notion is some element of bad faith.'" *Id.* (*quoting Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980)). The *Wilson* Court also stated that this body of non-trademark unfair competition law "has evolved around the theory that at times business competitors engage in activity which, while perhaps not actionable under other commercial tort theories, so 'shocks judicial sensibilities' or violates 'standards of commercial morality'" that it cannot be tolerated. *Id.* (*citing Margarete Steiff, Inc. v. Bing*, 215 F. 204 (D.N.Y. 1914); *People ex rel. Mosk v. National Research Co.*, 201 Cal. App. 2d 765 (1962)).

### B. Plaintiff Will Likely Succeed on the Merits

Success on the merits means demonstrating that it is likely that the patent is infringed and that the patent will survive any invalidity challenges. *See Titan Tire*, 566 F.3d at 1376. However, issued patents are presumed valid, and that presumption applies at trial as well as before trial. *Id.* at 1376-77. "Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." *Id.* at 1377 (citing *Purdue Pharma v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001) and *Canon Comp. Sys., v. Nu-Kote Int'l Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998)).

Defendants are infringing at least Claim 1 of Plaintiff's Patent. *See* Dkt. 1 at ¶45 and Exhibits 1 and 2 thereto. As shown in the attached exemplary claim chart, the Infringing Products

7

meet all of the elements of Claim 1. Exhibit B. Specifically, the Accused Products each include mirrors that provide a reflection; a border that surrounds an entire edge of the mirror; a plurality of crystals disposed on a front surface of the border; LEDs disposed within the plurality of crystals; and a CPU for controlling the LEDs to change colors or lighting settings. *See* Exhibit B; *see also* Plaintiff's Patent (Dkt. 1-1).

Accordingly, Plaintiff has shown a high likelihood of success regarding infringement of at least one claim. With respect to validity, the Court must only "make an assessment of the persuasiveness of the challenger's evidence" – if presented – "recognizing that it is doing so without all evidence that may come out at trial." *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882-83 (Fed. Cir. 1987). The Court need not resolve validity at this early stage. *Id*. At this point, because Defendants have not set forth a validity defense, the presumption of validity attached to all issued patents controls and is enough to establish a likelihood that the patent will survive an invalidity challenge. *Titan Tire Corp. v. Case New Holland, Inc*., 566 F.3d 1372, 1377 (Fed. Cir. 2009) ("[I]f a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue").

Regarding unfair competition, Plaintiff has demonstrated a likelihood of success on the merits as well. Plaintiff has shown that Defendants are foreign entities and that Defendants are unfairly competing through use of Seller Aliases, sales on third-party marketplaces that permit obfuscation of identity, and otherwise structuring their business to evade traditional enforcement mechanisms. Specifically, Defendants' infringing schemes are orchestrated in a manner to evade U.S. patent laws and thereby shield their assets from the jurisdiction of U.S. Courts and enforcement agencies.

8

### C. Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief

The second factor, irreparable harm, means harm that cannot be fully remedied by a final judgment in the plaintiff's favor. *See H-D, USA, LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-C-3581, 2021 U.S. Dist. LEXIS 187253, at *10 (N.D. Ill. Sept. 24, 2021) (citing *Kraft Foods Brands LLC v. Cracker Barrel Old Country Stores*, Inc., 735 F.3d 735, 740 (7th Cir. 2013). Irreparable harm can be shown by, for example, loss of customers and market share, particularly where the specific loss of customers is not easily quantifiable, and loss of goodwill and reputation. *See e.g.*, *Life Spine, v. Aegis Spine, Inc.*, 8 F.4th 531, 545-45 (7th Cir. 2021). Likewise, while the Supreme Court has rejected a presumption of irreparable harm stemming from the right to exclude in patent cases (*see eBay, v. MercExchange, LLC*, 547 U.S. 388 (2006)), that holding does not "swing the pendulum in the opposite direction" and thus "[w]hile a patentee's right to exclude alone cannot justify an injunction, it should not be ignored either." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1147, 1149 (Fed. Cir. 2011).

Here, Plaintiff will be immediately and irreparably harmed if Defendants are not enjoined from making, using, selling, and offering for sale the Infringing Products. As demonstrated in Plaintiff's Complaint and the attached declaration, Defendants' infringement has made it difficult for Plaintiff and its licenses to sell its genuine products in what should be an exclusive market. *See e.g.*, Dkt. 1, ¶¶ 32, 42, 50 and Exhibit C, ¶ 10. The infringement is also damaging Plaintiff's reputation and preventing current and future sales. Exhibit C, ¶¶ 11-12. These are all valid grounds for finding irreparable harm. *See Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013).

Websites in China notify online sellers about new infringement lawsuits filed by rights holders, including a previous lawsuit filed by the Plaintiff. *See* https://sellerdefense.cn/bling-

mirror-llc250103/ (Chinese website reporting on a previous "Schedule A" style case filed by Plaintiff) (last accessed 8/26/2025). Consequently, sellers of infringing products, including Defendants in this case, are warned to take action to protect their assets. Sellers typically then make themselves judgment proof (at least for the time being) by moving their assets across international borders and potentially closing accounts. These foreign sellers are particularly savvy at evading enforcement efforts, employing tactics designed to avoid detection and accountability, thereby complicating Plaintiff's efforts to protect its rights.

Plaintiff is also harmed by the loss of its exclusionary rights. The ability to exclude others is fundamental to the patent right. *See Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d at 1383 ("Indeed, the encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude"); *Smith Int'l, v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983) ("The very nature of the patent right is the right to exclude others"). That right is rendered meaningless where others are permitted to continue their infringement. This is particularly true because Plaintiff has its patent rights only for a limited time. Thus, the inability to exclude others for any period of time during the term of the patent – including during the period of time necessary to reach a final judgment in this case – constitutes harm for which Plaintiff cannot be adequately compensated at law. Therefore, an injunction is necessary to preserve Plaintiff's right to exclude others from practicing its invention.

Loss of market share also constitutes irreparable injury for which Plaintiff has no adequate remedy at law. *See Black & Decker v. Robert Bosch Tool Corp.*, No. 04-C-7955, 2006 U.S. Dist. LEXIS 86990 (N.D. Ill. Nov. 29, 2006) ("Loss of market share is a key consideration in determining whether a plaintiff has suffered irreparable harm"). Plaintiff is being prevented from expanding its sales in what should be an exclusive market due to Defendants' infringing activity

and unfair commercial tactics which evade traditional enforcement mechanisms. If this market share is lost due to Defendants' unlawful acts, it might never be recovered. Such loss cannot be remedied by mere monetary damages (or even a permanent injunction issued at the end of this case) and thus constitutes irreparable harm. *See Canon, v. GCC Intern. Ltd.*, 2006-1615, 2008 U.S. App. LEXIS 2429, \*11 (Fed. Cir. 2008) ("Due to the difficulty (if not impossibility) of determining the damages resulting from price erosion and loss of market share, an award of money damages would not be sufficient").

Defendants directly compete with Plaintiff and their infringing products are sold through similar channels of trade as Plaintiff's product. Thus, each sale of an Infringing Product made by Defendants is a sale that Plaintiff cannot make. This loss of an initial sale also results in lost exposure to future repeat sales. *See generally Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154 (Fed. Cir. 2011) (considering loss of access to potential customers as evidence of irreparable harm). Consequently, Plaintiff's market share is actively being harmed by Defendants' continued unlawful conduct.

### D. The Balancing of Harms Favors Plaintiff

The third factor, the balance of hardships, is measured by weighing the possibility of irreparable harm to the non-moving party if the injunction is issued, balanced against the irreparable harm the moving party will suffer if the relief is denied. *See Ty, v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). This has been described as a "sliding scale" analysis. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). The more likely Plaintiff is to succeed on the merits, the less the balance of harms needs to weigh in its favor. *Chicagoland Aviation, LLC v. Todd*, Case No. 12-c-1139, 2012 U.S. Dist. LEXIS 167796, \*6 (N.D. Ill. November 27, 2012) (citing *Christian Legal*, 453 F.3d at 859)). The Court weighs these factors, "sitting as would

11

a chancellor in equity," when deciding whether to grant the requested injunction. *Ty, Inc.*, 237 F.3d at 895 (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)).

As set forth above, Plaintiff has made a strong showing of a likelihood of success on the merits of its patent infringement claim; thus, the balance of hardships need only weigh slightly in its favor. Additionally, any potential harm to Defendants is minimal, both Defendants sell non-accused products and can seemingly continue to operate their business(es) through those sales during the period of any injunction. In contrast, Plaintiff will suffer immediate and irreparable harm for which there is no adequate remedy at law if this injunction is not granted, as set forth above. Accordingly, the balance of harms weighs strongly in favor of Plaintiff.

### E. A Temporary Restraining Order Will Not Harm the Public Interest

The starting point for analysis of the public interest is favoring protection of a patentee because of the "strong public policy favoring the enforcement of patent rights." *PPG Indus., v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996). Thus, the inquiry should be "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech, v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1998). Here, there is no public interest, let alone a critical one, that will be injured by the grant of the requested relief. The public has an interest in the functioning of its patent system and in encouraging fair business practices. *See PPG*, 75 F.3d at 1567. Accordingly, no public interest will be harmed by an injunction.

### V. The Equitable Relief Sought Is Appropriate

Plaintiff requests a temporary restraining order requiring Defendants to immediately cease all making, using, importing, selling, and/or offering to sell the Accused Products. Such relief is necessary to stop the ongoing harm to the Plaintiff, including loss of market share and erosion of Plaintiff's patent rights, and to prevent the Defendants from continuing to benefit from infringing upon Plaintiff's patent. The need for *ex parte* relief is magnified in today's global economy where

12

infringers can operate anonymously over the Internet. Plaintiff is currently unaware of both the ownership and verified locations of the Defendants, as well as other e-commerce stores used to distribute and sell the Infringing Products.

Plaintiff also requests an *ex parte* restraint of Defendants' assets so Plaintiff's right to an equitable accounting of Defendants' profits from their unfair competition is not impaired. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks equitable relief. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). Pursuant to 15 U.S.C. § 1117(a)(1), Plaintiff is entitled to recover Defendants' profits. Here, Plaintiff's Complaint seeks that Defendants account for and pay Plaintiff all profits realized by Defendants as a result of Defendants' unlawful acts and Plaintiff has shown a strong likelihood of success on the merits of its patent infringement and unfair competition claims. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff.

## VI. Plaintiff Requests Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2)). Plaintiff requests expedited

discovery to identify Defendants contact information for service as well as the bank and payment accounts Defendants use for their infringing operations. Plaintiff's request is limited to include only what is essential to prevent further irreparable harm and move this case forward. Discovery is necessary to identify Defendants and freeze relevant financial accounts to ensure that infringing activities are contained. *See, e.g., AJ's Nifty Products v. The Individuals*, No. 24-cv-02375 (N.D. Ill. Apr. 30, 2024) (unpublished). Plaintiff requests that expedited discovery be granted.

**VII.     Plaintiff Proposes a $10,000 Bond to Secure the Injunction**

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Due to the strength of Plaintiff's evidence for patent infringement claim, Plaintiff requests that this Court require Plaintiff to post a bond of no more than ten thousand U.S. dollars ($10,000.00).

**VIII.   Conclusion**

Due to the strong likelihood of success on the merits of Plaintiff's case and the irreparable harm that would result without an injunction, Plaintiff requests that its temporary restraining order be immediately granted.

Dated: August 26, 2025

Respectfully submitted,

/s/ Benjamin A. Campbell
Edward L. Bishop
ebishop@bdl-iplaw.com
Benjamin A. Campbell
bcampbell@bdl-iplaw.com
James J. Jagoda
jjagoda@bdl-iplaw.com
Brockton D. Ash
bash@bdl-iplaw.com
BISHOP & DIEHL, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
Tel.:     (847) 969-9123

*Counsel for Plaintiff, Bling Mirror, LLC*

14