**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BLING MIRROR LLC, | |
| Plaintiff, | Case No. 1:25-cv-10024 |
| v. | District Judge Elaine E. Bucklo |
| GUANGZHOU SHENGYANG LEATHER GOODS CO., LTD. d/b/a SYBAG and GUANGZHOU FEIZHULIU LEATHER GOODS CO., LTD. d/b/a FESHINE | Magistrate Judge Daniel P. McLaughlin |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

## MOTION FOR COURT-ORDERED SERVICE

Plaintiff respectfully submits this Motion for Court-Ordered Service pursuant to Fed. R. Civ. P. 4(f)(3). Plaintiff requests that the Court issue an order permitting Plaintiff to effectuate service of process by electronic mail to any email addresses provided for Defendants by third parties.

## I.     INTRODUCTION

Plaintiff brought this suit to stop Defendants' unfair methods of competition and enforce its patent rights associated with Plaintiff's Patent attached as Exhibit 1 to the Complaint. Dkt. 1-1. Plaintiff is the owner, by way of assignment, of Plaintiff's Patent with full and sole control over any enforcement and exploitation, including the right to sue for past damages. As alleged in the Complaint, both of the Defendants has marketed and offered for sale, sold, and/or imported into the United States products that violate Plaintiff's rights in its patent, through online marketplaces that permit Defendants to obscure their identities. By using online marketplaces, Defendants can make their products available to consumers without exposing contact information or, at best, providing only minimal contact information. As a result, Plaintiff has limited contact information

of questionable accuracy for Defendants. The information that is available demonstrates that Defendants are foreign entities located in the People's Republic of China. By this motion, Plaintiff seeks an order from the Court in accordance with Fed. R. Civ. P. 4(f)(3) permitting Plaintiff to serve Defendants by email and/or electronic message.

Rule 4(f)(3) permits Court-ordered service in these circumstances because the means of service proposed by Plaintiff are not prohibited by international agreement and comport with due process. Likewise, service through these means will avoid any delay in effecting service on Defendants and permit this case to move forward in a timely fashion.

## II.      BACKGROUND OF DISPUTE

As noted, Defendants use online marketplaces (*e.g.*, Amazon.com) to sell their products to consumers. Defendants may also set up e-commerce websites of their own. On information and belief, Defendants do not sell their products through traditional "brick and mortar" stores of their own or of distributors. Additionally, on information and belief, Defendants use drop shipping options to avoid the need to maintain inventory of their infringing goods. That is, Plaintiff believes that Defendants collect orders and either ship the products directly to consumers, or ship bulk inventory to their online retailers (such as Amazon.com) and instruct those online retailers to complete shipments. Accordingly, Plaintiff has only minimal contact information of unknown accuracy for each Defendant and Defendnats seemingly do not keep other assets in the country.

## III.      LEGAL STANDARD

Service upon a business entity that is located outside of the United States is governed by Fed. R. Civ. P. 4(h)(2), which in turn permits service in any manner permitted by Rule 4(f) (governing service of an individual in a foreign country), with the exception of personal service under Rule 4(f)(2)(C)(i). Rule 4(f) provides multiple manners of effecting service, and the Seventh

Circuit has not addressed whether any particular manner of service must be attempted before requesting court-ordered service under Rule 4(f)(3). Some courts have required that a plaintiff demonstrate why service under Rule 4(f)(3) should be permitted over the other manners outlined in Rule 4(f). *See e.g.*, *Flava Works, Inc. v. Does 1-26*, No. 12 C 5844, 2013 U.S. Dist. LEXIS 57588 at \*18 (N.D. Ill. Apr. 19, 2013) (citing *Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) for the assertion that there is no indication of hierarchy or structure in Rule 4(f) but citing the advisory committee notes to Rule 4 and requiring a showing of why alternative service should be permitted); *NBA Properties, Inc. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790, 797 (N.D Ill. 2021) (finding the Court could authorize service by email as long as Plaintiffs "make a showing as to why alternative service should be authorized"); *1025 W. Addison St. Apts. Owner, LLC v. Grupo Cinemex, S.A. de C.V.*, No. 20-CV-06811, 2021 U.S. Dist. LEXIS 99131 at \*21 (N.D. Ill. May 26, 2021) ("Court-directed service pursuant to Rule 4(f)(3) is appropriate under certain circumstances, such as when 'there is a need for speed that cannot be met by following the Hague Convention methods'") (quoting *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016)).

Even when requiring some showing of justification for permitting service under Rule 4(f)(3), courts generally fall short of specifically requiring plaintiffs to first attempt service under the Hague Convention. *See Flava Works, Inc.*, 2013 U.S. Dist. LEXIS 57588 at \*18; *NBA Props*, 549 F. Supp. 3d at 796; *1025 W. Addison St.*, 2021 U.S. Dist. LEXIS 99131 at \*22; *CFTC v. Caniff*, No. 19-CV-2935, 2020 U.S. Dist. LEXIS 33416 at \*14 (N.D. Ill. Feb. 27, 2020) ("The plain language of the rule does not require a plaintiff to attempt service under Rule 4(f)(1) before seeking authorization to use an alternative means of service under Rule 4(f)(3)"); *Monco v. Zoltek Corp.*, No. 17-cv-6882, 2018 U.S. Dist. LEXIS 111967 at \*11 (N.D. Ill. Apr. 24, 2018) (explaining that

3

a plaintiff "is not required to first attempt service through the Hague Convention under Rule 4(f)(1) before asking [the] Court to allow alternate means").

There are only two limitations to the methods of service that can be court-ordered under Rule 4(f)(3): the method must not be prohibited by international agreement; and it must comport with constitutional notions of due process. *See Rio Props.*, 284 F.3d at 1017-19. "In fact, as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Id*. at 1014 (citing *Mayoral-Amy v. BHI Corp.*, 180 F.R.D. 456, 459 n. 4 (S.D. Fla. 1998); *but see* Fed. R. Civ. P. 4(f)(2) advisory committee notes (stating that under Rule 4(f)(2), "service by methods that would violate foreign law is not generally authorized").

To satisfy the due process requirement, "the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Rio Props.*, 284 F.3d at 1016 (quoting *Mullave v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

## IV.    ARGUMENT

### A.    Court-Ordered Service Under Fed. R. Civ. P. 4(f)(3) is Warranted

It is not necessary to demonstrate efforts to serve a defendant under other sections of Rule 4 before moving for court-ordered service under Rule 4(f)(3). *See Rio Props.*, 284 F.3d at 1015-16; discussion *supra*. Rather, Plaintiff need only show a justification for allowing alternative service, not that other methods of service would be ineffective.

Here, court-ordered service under Rule 4(f)(3) is warranted at least because there is a need for speedy service that cannot be met by serving under the Hague Convention. *See Strabala* 318 F.R.D. at 114. Plaintiff has filed a motion for a temporary restraining order and plans to move for

4

a preliminary injunction in due course. As outlined in the TRO motion, and similarly supported in the Complaint itself, there is ongoing infringement and a reasonable concern that Defendants will disappear with their ill-gotten gains in the absence of prompt injunctive relief. For Defendants to appear and present any contrary arguments in opposition to the injunction, if any, they first need to be served. Service under the Hague Convention can take several months and will impede the Court's ability to address the injunctive relief in a timely manner.

Likewise, the particular facts of this case warrant permitting court-ordered service under Rule 4(f)(3) because Plaintiff has no way to confirm the facts necessary for successful service under the Hague Convention. In particular, while Plaintiff has been able to discover limited contact information for Defendants, Plaintiff cannot confirm the Defendants' actual corporate status; that is, whether they are corporations, limited liability companies, or even individuals that control the subject merchant accounts and online identities and merely do business under an assumed business name. It would simply be impossible for Plaintiff to complete paperwork for service under the Hague Convention with a significant degree of confidence that the paperwork would not be rejected several months later as incomplete or inaccurate.

### B. The Proposed Methods of Service Are Not Prohibited

Plaintiff proposes serving Defendants through electronic message to their online merchant accounts (through which they have conducted their infringement) or to the email address associated with those accounts (where available). Additionally, if ordered by the Court and to the extent known or later discovered, Plaintiff would follow that formal electronic service with courtesy copies of the Summons and Complaint to be delivered by international courier to any address discovered for Defendants or linked to their merchant accounts.

5

Service by electronic means is not prohibited by the Hague Convention. Rather, Courts have routinely held that a country's objection to Article 10 of the Hague Convention (which would have permitted service through "postal channels") is distinct from the proposed alternative means. For example, while discussing email, one court noted: "[w]hile there is some disagreement on this issue, numerous courts have held that service by e-mail does not violate the Hague Convention, even when the destination country has objected to service through postal channels under Article 10." *SEC v. China SkyOne Med., Inc*., No. CV 12-07543-MWF (MANx), 2013 U.S. Dist. LEXIS 202424, at *5-6 (C.D. Cal. Aug. 20, 2013) (Citing cases and holding that "[t]he better argument is that e-mail is sufficiently distinct from postal channels that the two should not be equated under the Hague Convention. Therefore, China's objection to the means of service specified in Article 10 does not prevent service by e-mail").

Thus, the requested service is not prohibited by any international agreement. Additionally, although not necessary, if the Court orders, further delivering the Summons and Complaint to Defendants via international courier would serve only to improve the likelihood that the Defendants will receive actual notice of this dispute and would further comport with due process. *See e.g., LG Corp. v. Huang Xiaowen*, No. 16-CV-1162 JLS (NLS), 2017 U.S. Dist. LEXIS 16611, at *7-8 (S.D. Cal. Feb. 6, 2017) (holding that the previously ordered email service was proper and that plaintiffs complied with that procedure by attempting to send, re-send, follow-up and track delivery of their email messages and added to that compliance by also sending the complaint and summons via international courier).

### C.     The Proposed Methods of Service Comport with Due Process

"Even if facially permitted by Rule 4(f)(3), a method of service of process must also comport with constitutional notions of due process." *Rio Properties*, 284 F.3d at 1016.

6

Compliance with the notions of due process requires that the method of service be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. (quoting *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)). Messages sent via Amazon, Walmart, and eBay are reliable and directly connected to the platform where the infringement is occurring. Email is reliable and trackable. If necessary, third-party services that secure, certify, and confirm transmission, delivery, and (potentially) opening of emails can be used. *See e.g., Microsoft Corp. v. Goldah.Com Net. Tech. Co*., No. 17-CV-02896-LHK, 2017 U.S. Dist. LEXIS 168537, at *12-13 (N.D. Cal. Oct. 11, 2017) (discussing utilization of the third-party service "RPost"). Email and electronic messages are also inexpensive and easily re-sent over a series of days to increase the chance that they are received and reviewed. Numerous courts have held that email is reliable enough to comport with due process, particularly where the defendant's internet conduct is at issue. *See e.g., Microsoft*, 2017 U.S. Dist. 168537, at *14-15 ("As other courts in [the Northern District of California] have noted, where defendants conduct commercial internet activities, email service is reasonably calculated to apprise them of the suit and thus comports with due process." (citing *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 U.S. Dist. LEXIS 42160, at *4-6 (N.D. Cal. Mar. 27, 2012)); *see also Rio Properties*, 284 F.3d at 1016 (listing email among the wide variety of Court authorized means of service).

As noted above, the central question under the due process analysis is whether the proposed methods of service are reasonably calculated to provide notice. While the cases cited above support the holding that email alone is sufficiently calculated to provide notice, Plaintiff proposes, if ordered by the Court, additional steps (*i.e.*, sending of a courtesy hardcopy of the Summon and

7

Complaint) that would increase the likelihood that Defendants will be appraised of this case and be given an opportunity to lodge their objections.

### D. Judicial Economy Would be Served by Court-Ordered Service

As shown above, court-ordered service under Rule 4(f)(3) is particularly well-suited to the needs of this case and the proposed manner of service, because it is reasonably calculated to provide notice in this instance and comports with due process requirements. The requested service will also help increase judicial economy and ensure that the requested injunctive relief is addressed timely. Defendants are accused of infringing upon Plaintiff's patent rights in coordination with each other – at least as manufacturer/exporter and importer/seller, if not in closer collaboration. Accordingly, the facts relevant to the dispute with each Defendant largely overlap, and discovery is expected to be somewhat redundant and consistent from one Defendant to the other (assuming each Defendant is even a truly separate entity). It would best serve judicial economy to conduct this process in unison between the Defendants rather than having Plaintiff duplicate the process with each Defendant on a different schedule based on differing abilities to serve by other means.

## V. DEFENDANTS' CONTACT INFORMATION FOR SERVICE

As noted above, Plaintiff requests court-ordered service through email or electronic message. Regarding email, Plaintiff will use the email addresses provided by third party marketplaces (*i.e.*, Amazon.com) as identified in any discovery authorized under Plaintiff's proposed *ex parte* temporary restraining order. If the Court so orders, Plaintiff will also send a courtesy copy by international courier.

## VI. CONCLUSION

For the reasons outlined above, Plaintiff respectfully requests that its Motion be granted and that it be permitted to serve Defendants under Fed. R. Civ. P. 4(f)(3) by email or electronic message.

DATED:  August 26, 2025

Respectfully Submitted,

/s/ Benjamin A. Campbell
Edward L. Bishop
ebishop@bdl-iplaw.com
Benjamin A. Campbell
bcampbell@bdl-iplaw.com
James J. Jagoda
jjagoda@bdl-iplaw.com
Brockton D. Ash
bash@bdl-iplaw.com
BISHOP & DIEHL, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
Tel.:    (847) 969-9123

*Counsel for Plaintiff, Bling Mirror, LLC*