**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BLING MIRROR LLC, | |
| Plaintiff, | Case No. 1:25-cv-10024 |
| v. | District Judge Andrea R. Wood |
| GUANGZHOU SHENGYANG LEATHER GOODS CO., LTD. d/b/a SYBAG and GUANGZHOU FEIZHULIU LEATHER GOODS CO., LTD. d/b/a FESHINE | **JURY TRIAL DEMANDED** |
| Defendants. | |

**DEFENDANTS GUANGZHOU SHENGYANG LEATHER GOODS CO., LTD. d/b/a SYBAG and GUANGZHOU FEIZHULIU LEATHER GOODS CO., LTD. d/b/a FESHINE RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

Defendants Guangzhou Shenyang Leather Goods Co., Ltd. d/b/a Sybag and Guangzhou Feizhuliu Leather Goods Co., Ltd. d/b/a Feshine (hereinafter referred to as "Defendants"), file this response in opposition to Plaintiff, Bling Mirror LLC's ("Plaintiff," or "Bling Mirror") motion for a temporary restraining order.

## I. INTRODUCTION AND FACTUAL BACKGROUND

On June 14, 2018, Plaintiff filed a patent application for the 10,258,174 B2 patent (herein referred to as "the 174 patent") for a color-changing, LED, full-length mirror with a crushed crystal border:

1. A full length light up bling mirror, comprising:

> a mirror to provide a reflection; and

> a border to surround an entire edge of the mirror, the border comprising:

>> a plurality of crystals disposed on a front surface of the border,

>> a plurality of light emitting diodes (LEDs) disposed within the plurality of crystals, and

>> a CPU to control the plurality of LEDs to change at least one of colors and lighting settings.

**Claim 1 of the 174 patent**

For the purpose of Defendants' non-infringement contention, the relevant claim language is "a plurality of light emitting diodes (LEDS) disposed within the plurality of crystals," discussed *infra*.

Plaintiff alleges in its Complaint, filed on August 21, 2025, that Defendants' mirror products, sold on Amazon, infringe the 174 patent. Defendants' accused mirror products are displayed below:



On August 26, 2025, Plaintiff filed an *Ex Parte* Motion for a Temporary Restraining Order, including expedited discovery.  However, Plaintiff is unlikely to succeed on the merits for two reasons.  First, Defendants' accused products do not infringe the 174 patent.  As noted, Claim 1 requires a plurality of LEDs "disposed **within** the plurality of crystals" of the mirror. 174 patent, claim 1.  However, the LEDs in Defendants' products are positioned on the **<u>side</u>** of the crystal border— certainly not within the crystals themselves, as the claim language requires.  This difference is fatal to Plaintiff's claim.

Second, two pieces of prior art have been identified. First, a YouTube video published on June 19, 2016 features a vanity mirror with LED lights are integrated with diamond-like, crystal, or gem elements positioned around the mirror. Although mirror's design includes the use of decorative LEDs, the mirror does not include color-changing LEDs. Second, U.S. Patent Publication No. 2010/0296298 A1, with a priority date of May 22, 2009, is cited. In this publication, a mirror with color-changing LED technology is featured. Thus, the asserted claims of the 174 patent are rendered

invalid under 35 U.S.C. §103 based on the combinations of elements provided in the prior art. Defendants' assets should have never been restrained because the 174 patent is invalid.

In addition to failing on the merits of the case, the other three factors included in the legal standard for a temporary restraining order (TRO) or a preliminary injunction favor the Defendant in this circumstance. These factors generally need to be met in order to impose a TRO or a preliminary injunction. The TRO should thus not be imposed.

## II.    LEGAL STANDARD

A TRO or preliminary injunction may be issued upon a showing that: "(1) there is a reasonable likelihood that Plaintiff will succeed on the merits; (2) Plaintiff will suffer irreparable injury if the order is not granted because there is no adequate remedy at law; (3) the balance of hardships tips in Plaintiff's favor; and (4) the public interest will not be disserved by the injunction." *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1076 (N.D. Ill. 1996).

In order to establish infringement of a utility patent, "every element and limitation of the claim must be present in the accused device, literally or by an equivalent." *See Inpro II Licensing*, *S.A.R.L. v. T-Mobile USA, Inc*., 450 F.3d 1350, 1357-58 (Fed. Cir. 2006).

## III.    ARGUMENT

**A.    Plaintiff Is Unlikely To Succeed On The Merits Because Defendants' Accused Products Do Not Meet the "A Plurality of Light Emitting Diodes (LEDS) Disposed *Within* the Plurality of Crystals" Element of Claim 1.**

As an initial matter, it does not appear that Plaintiff purchased the Defendants' mirror product to confirm that the LEDs are in fact "within" the crystals, i.e., to confirm infringement. Plaintiff is relying solely on the product pictures posted on Defendants' virtual storefronts, which do not show the LED arrangement beside the mirror frame.  Below are additional photos of

Defendants' products clearly showing that, once the frame panel is removed, the LED strip is glued to the **side** of the crystal border, taking the product outside the scope of the patent.









**Defendants' Accused Products**

Therefore, the element of the LEDs being present **within** the crystals has clearly not been met. The LEDs in the accused products are positioned **beside** the crystal border, and not **within** the crystals themselves, as the patent unambiguously requires.

Moreover, Figure 1 of the 174 patent confirms that the LEDs must be within the crystals. As shown below, each of the LEDs, designated by the number 14, must be positioned in the LED (13).



**174 patent, Figure 1.**

Accordingly, the patent figure shows *each* crystal containing an LED light. This is confirmed by the patent specification, which states "**each** of the plurality of LEDs **14** may be behind or within **each** of the plurality of crystals **13**, such that the plurality of crystals **13** reflect and enhance light emitted from the plurality of LEDs." 174 patent, column 3, lns. 6-10. Defendants'

accused products clearly do not have this one-to-one arrangement. Again, the LED strip in Defendants' products is positioned on the side of the crystal border—and there are far more crystals than LEDs. In fact, the LEDs in Defendants' products do not even touch the crystals, as shown above. Thus, Plaintiff cannot establish a likelihood of success on the merits because Defendants' accused products do not include all the elements of the claim, namely "a plurality of light emitting diodes (LEDS) disposed *within* the plurality of crystals."

### B. Plaintiff Is Unlikely to Succeed On The Merits Because The 174 Patent Is Invalid And Should Not Have Been Granted.

The claim of the 174 patent is likely to be found invalid over the prior art. 35 U.S.C. §§ 102 and 103. Although a U.S. patent normally enjoys a presumption of validity, the non-moving party in a TRO Motion may dispute this presumption by establishing the existence of a "substantial question" related to the invalidity of the patent. *See New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed. Cir. 1992). At the TRO or preliminary injunction stage, the burden imposed on the non-moving party is merely to show "vulnerability" of the patent—not to establish the patent's "invalidity." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1359 (Fed. Cir. 2001) (noting that the non-moving party's burden requires less proof than the clear and convincing standard required at trial). Thus, an assertion of an invalidity defense that the moving party cannot show "lacks substantial merit" must result in the denial of any preliminary injunctive relief. *Titan Tire Corp.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009).

The U.S. Court of Appeals for the Federal Circuit recently ruled the test for determining obviousness of a design and utility patents is the same, overruling a decades-old test for determining the validity of a design patent. *LKQ Corp. v. GM Glob. Tech. Operations LLC*, __ F.4th__, No. 2021-2348, 2024 WL 2280728 (Fed. Cir. May 21, 2024). The court held that the *Rosen-Durling* test, which was established in the 1990s, was "improperly rigid" and instead

utilized the framework established by *Graham v. John Deere*, which is the obviousness standard imposed for utility patents, namely 1) the scope and content of the prior art, 2) the level of skill of an ordinary designer or manufacturer, 3) differences between the invention and the prior art, and 4) objective indicia of non-obviousness. A design patent is obvious if a person of ordinary skill in the relevant art would have been motivated to combine the teachings of one or more prior art references to achieve the claimed invention and would have had a reasonable expectation of success in doing so. *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1363 (Fed. Cir. 2018). A "motivation and reasonable expectation may be present where the claimed invention is the 'combination of familiar elements according to known methods' that 'does no more than yield predictable results.'" *PGS Geophysical*, 891 F.3d at 1363 (quoting *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 415-16 (2007)).

The 174 patent is assigned an earliest priority date of June 14, 2017. Two pieces of prior art have been identified, and the asserted claims of this patent are rendered invalid under 35 U.S.C. §103 based on their combination. The first prior art is a YouTube video published on June 19, 2016 that references a vanity mirror with integrated LED and faux crystals positioned around the mirror. The mirror does not include color-changing LEDs. The second prior art is U.S. Patent Publication No. 2010/0296298 A1, with a priority date of May 22, 2009. In this publication, a mirror with color-changing LED technology is referenced. The claim chart below illustrates why the combination of this prior art invalidates the 174 patent.

| **174 Patent** | **Prior Art** |
|---|---|
| 1. A full length light up bling mirror, comprising: | <br><br>The YouTube video shows a full-length, light-up mirror YouTube video: https://www.youtube.com/watch?v=Zj5q9nBZ1p0 |
| a mirror to provide a reflection; | The YouTube video shows a full-length, light-up mirror that has reflection capability. |
| And a border to surround an entire edge of the mirror, | The mirror shown in YouTube video has a border that surrounds the entire edge of the mirror. |
| The border comprising: a plurality of crystals disposed on a front surface of the border, |  |

| The border comprising: a plurality of light emitting diodes (LEDs) disposed within the plurality of crystals, | <br><br>As shown in the picture, the LEDs are mixed together within the crystals. |
|---|---|
| And a CPU to control the plurality of LEDs to change at least one of colors and lighting settings. | <br><br>The YouTube video does not teach a CPU to control the plurality of LEDs to change at least one of colors and lighting settings, but the publication 2010/0296298 A1 teaches a strip of LEDs changing intensity which is same as changing color in Fig. 3. |

The combination of the prior art is well-supported because both decorative LED mirrors and color-changing LEDs were well-known and common technologies, and each individually provides enhanced lighting experiences. The YouTube video shows a vanity mirror encircled by ornamental

LEDs and gem features to achieve visually attractive and premium-quality illumination, but it does not address user customization or the importance of true-to-life color accuracy. This element, well known known in the art, is disclosed in US 2010/0296298 A1 ("the I-LED Mirror patent"), which explicitly teaches that adding RGB/color-changing functionality to mirror illumination confers concrete advantages: (1) the ability to optimize light for specific purposes by adjusting color temperature; (2) improved color accuracy for makeup and dressing; and (3) creating a customizable and aesthetically pleasing lighting environment for various applications, including commercial and home settings.

A person of ordinary skill in the art would have been motivated to combine the ornamental, crystal-surrounded LED vanity mirror with the color-control features taught by the I-LED Mirror patent in order to achieve a result that is both functionally superior (e.g., true-color application, user adjustment for ambiance) and visually appealing. Such a combination would have been expected to yield predictable, enhanced lighting performance and a more versatile product, directly addressing consumer demand for both improved aesthetics and functional lighting control in vanity mirrors. This rationale finds support in the following USPTO-accepted motivations:

(1) Applying a known technique (color-changing LEDs) to a device ready for improvement (ornamental LED mirrors) to yield a predictable improvement in performance and user satisfaction;

(2) commercial motivation to create a more competitive product by enabling both decorative and functional lighting features, aligning with trends for more customizable and high-value vanity mirror products; and

(3) enhancement of commercial opportunities and user experience by integrating features that serve both aesthetic and practical purposes in a mirror product.

This analysis is grounded in established KSR rationales and is consistent with the requirement that the motivation to combine prior art must be based on articulated reasoning with rational underpinnings, not merely hindsight or conclusory statements. Therefore, both the prior art undoubtedly raises a "substantial question" related to the invalidity of the patent. There can thus be no question that Defendants have a strong meritorious defense in challenging the validity of the 174 patent. Plaintiff cannot establish a likelihood of success on the merits, and Plaintiff's TRO should be vacated.

### C. Plaintiff Has An Adequate Remedy At Law

The Court should deny the Injunction because Plaintiff failed to demonstrate that it does not have adequate remedy at law. Conclusory or speculative contentions are insufficient to demonstrate irreparable harm. *See, e.g., E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704-06 (7th Cir. 2005) (stating that "speculative injuries do not justify" granting injunctive relief, and that a moving party "cannot obtain a temporary injunction by speculating about hypothetical future injuries"). Rather, Plaintiff's "evidence must demonstrate that [it] ha[s] carried [its] burden 'that irreparable injury is likely' — not just possible — 'in the absence of an injunction.'" *Mich. v. U.S. Army Corps of Eng'rs*, No. 10-CV-4457, 2010 WL 5018559 at *24 (N.D. Ill. Dec. 2, 2010). Here, Plaintiff conclusively claimed a loss of sales, loss of exclusionary rights, and loss of market share, but proffered no evidence of specific instances of lost sales that are attributable to the Defendants.

But, even assuming Plaintiff could prove that it was losing sales due to the Defendant's conduct, the law is well-established that if "losses are purely financial, easily measured, and readily compensated[,] [t]here is . . . no showing of irreparable harm, and on this ground alone the temporary injunction should [be] denied." *Praefke Auto Elec. & Battery Co., Inc. v. Tecumseh*

*Prods. Co., Inc.*, 255 F.3d 460, 463 (7th Cir. 2001) (internal citations omitted) (holding that movant's alleged harm sounded in lost profits, which "ha[d] not fallen to a point that threatens [the movant's] solvency," and thus did not constitute irreparable harm). Thus, if this Court dissolves the Injunction, and it is later determined that Defendants were not permitted to sell the alleged infringing products, Plaintiff can still be made whole by recovering any economic loss. *Micro Data Base Sys., Inc. v. Nellcor Puritan Bennett, Inc.*, 165 F.3d 1154, 1157 (7th Cir. 1999) (no irreparable harm if "only money is at issue.")

Further, Plaintiff levies attacks against Chinese companies and foreign companies generally, and, in stereotyping parties without distinction, attempts to generalize the conduct of some parties to the Defendants. It is axiomatic that attempts to plead "guilt by association is impermissible." *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 664 (S.D.N.Y. 2017); *United States v. Jones*, 713 F.3d 336, 350 (7th Cir. 2013) (courts cannot "endorse the impermissible inferences of guilt by association or mere presence."); *McGhee v. Joutras*, 1996 WL 706919, at *5 (N.D. Ill. Dec. 5, 1996) (rejecting "impermissible guilt-by-association premise that fuels each of [a party's] arguments."). On these facts particularly, Defendants are selling non-infringing items, thus, such representations as to Defendants' conduct and motives is simply unsubstantiated and inapplicable.

In alleging damage to its goodwill and reputation, Plaintiff makes this allegation simply as a bald assertion. No evidence or further details in support of this allegation is offered. While harm to goodwill can be an irreparable injury in certain circumstances, the "cases where courts have found irreparable harm from a loss of goodwill or business relationships have involved situations where the dispute between the parties leaves one party unable to provide its product to its customers." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 2011 WL 5325545, at *6 (N.D. Ill. Nov. 3, 2011). In this case, Plaintiff has not alleged—nor can it—that it will be unable to provide its products to customers because of Defendants' conduct. Indeed, far from harming Plaintiff, Defendants'

legitimate competition is no basis for the "drastic" imposition of a TRO.

In sum, Plaintiff's failure to show irreparable harm and inadequacy of remedy at law obviates any need for the Court to reach the remaining factors for considering injunctive relief. *See Smith, 2016 Abbott Labs.*, WL 2593957, at *3; 2006 WL 3718025, at *2; David White Instruments, 2002 WL 31741235, at *2.

### D. The Balance of Harms Tilts Sharply In Defendants' Favor.

The balance of harms weighs strongly in favor of Defendants. The Defendants have demonstrated a strong possibility that Plaintiff's infringement claim will fail on the merits. Additionally, Plaintiff cannot "me[e]t their burden of showing that the harm [it] will suffer if the injunction is denied is substantially greater than the harm [the Defendant] would suffer if the injunction were granted." *Kastanis v. Eggstacy LLC*, 752 F. Supp. 2d 842, 858-59 (N.D. Ill. 2010). On the contrary, the TRO would be doing harm to Defendants' goodwill, not the other way around, and it should not be imposed.

### E. Public Interest Is In Defendants' Favor

The interest in the public being able to fairly purchase competing products, through choice and novel design, should be supported. Defendant is a highly-ranked seller. The consuming public scours Amazon listings looking for quality products and fair prices. When doing so, they find Defendants' products. This threatens Plaintiff. However, fair play and competition weigh in favor of the public interest and Defendant. For the above reasons, Defendants' respectfully request that the Court deny Plaintiff's motion for a temporary restraining order.

/s/Xiyan Zhang
Xiyan Zhang
xzhang@stratumlaw.com
Pete Wolfgram
pwolfgram@stratumlaw.com
STRATUM LAW LLC
2424 E. York St. Ste. 223
Philadelphia, PA, 19125
xzhang@stratumlaw.com
Counsel for *Defendants*