IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLING MIRROR LLC,<br><br>    Plaintiff,<br><br>v.<br><br>GUANGZHOU SHENGYANG LEATHER GOODS CO., LTD. d/b/a SYBAG and GUANGZHOU FEIZHULIU LEATHER GOODS CO., LTD. d/b/a FESHINE<br><br>    Defendants. | Case No. 1:25-cv-10024<br><br>District Judge Andrea R. Wood<br><br>Magistrate Judge Daniel P. McLaughlin<br><br>**JURY TRIAL DEMANDED** |

## REPLY IN SUPPORT OF TRO AND PRELIMINARY INJUNCTION

Defendants Guangzhou Shengyang Leather Goods Co., Ltd. d/b/a Sybag and Guangzhou Feizhuliu Leather Goods Co., Ltd. d/b/a Feshine present two arguments for why injunctive relief should not be granted, neither is compelling. First, Defendants assert that their products do not infringe the '174 Patent because the LEDs in their mirrors are beside the crystals rather than encased by the crystals. This argument categorically fails based on the description in the patent specification defining "within" and directing how adjectives are used within the patent. Second, Defendants assert that the '174 Patent is invalid over the combination of two prior art references: a YouTube video and a published patent application. The YouTube video, however, is dated less than a year prior to the earliest priority date of the '174 Patent; and thus is not clearly prior art under 35 U.S.C. § 102. Likewise, neither reference discloses the border, crystals, and LEDs as claimed in the '174 Patent. Defendants make only passing arguments at the other factors pertinent to the injunctive relief standard. Thus, because Defendants' non-infringement and invalidity arguments lack substantial merit, the Court should grant Plaintiff's motion in its entirety.

## I. DEFENDANTS' MIRRORS INFRINGE THE '174 PATENT

Defendants dispute only a single element of Claim 1 of the '174 Patent; namely, the LEDs being "within" the crystals. *See* Dkt. 18, p. 2 ("For the purpose of Defendants' non-infringement contention, the relevant claim language is 'a plurality of light emitting diodes (LEDS) disposed within the plurality of crystals.'") (quoting from Claim 1). Defendants do not dispute that the accused mirrors satisfy every other element of Claims 1-4 of the '174 Patent.

   a. <u>Defendants' Infringing Mirrors Include LEDs Disposed Within the Crystals</u>

Defendants offer a tortured reading of Claim 1 and the specification of the '174 Patent to support their assertion of non-infringement. First, Defendants assert a narrow reading of "within" that is not only unsupported by the intrinsic evidence but also contradicts the inventor's instructions. "A patentee is free to be [her] own lexicographer" and instruct a reader how to define and interpret words and phrases used within her patent. *Mentor Graphics Corp. v. EVE-USA, Inc.* 851 F.3d 1275, 1294 (Fed. Cir. 2017). Ms. Huerta, the inventor of the '174 Patent, did precisely that by providing explicit instructions in the "Detailed Description" portion of the patent specification. As relevant here, Ms. Huerta instructed readers as follows:

> when an element is referred to as being "connected" or "coupled" to another element, it can be directly connected or coupled to the other element or intervening elements may be present. In contrast, when an element is referred to as being "directly connected" or "directly coupled" to another element, there are no intervening elements present. Other words used to describe the relationship between elements should be interpreted in a like fashion (e.g., "between" versus "directly between," "adjacent" versus "directly adjacent," etc.).

U.S. Patent No. 10,258,174 (Dkt. 1-1) at 2:24-33

In Claim 1, the '174 Patent states that the LEDs are "disposed within the plurality of crystals"; it does not state that the LEDs are *directly* disposed within the plurality of crystals. Following the instructions in the specification, "disposed within" must be read more broadly than

*directly* disposed within and must encompass the possible existence of intervening elements. In other words, "disposed within" does not mean "enveloped by" or "encased within" as Defendants appear to assert.

Relevant Federal Circuit case law, albeit nonprecedential[1], also instructs that this broader definition of "within" should be used unless something in the specification or prosecution history supports a narrower reading. For example, in *Foster*, the Federal Circuit addressed the construction of "in," "within," and "between" and vacated a summary judgment based on narrow readings of those terms. *Foster v. Hallco Mfg. Co.*, 1997 U.S. App. LEXIS 18989, at *21-22 (Fed. Cir. July 14, 1997). In reversing the summary judgment order, the Federal Circuit held that there was no proffered justification for narrowing these terms:

> The district court construed these words more narrowly than required by the claim language and context. The word "in" does not require that something be completely and continuously inside of something else. The word "within" does not require that something be completely and continuously within something else. Further, as discussed above in more detail, the word "between" does not require that something be completely and continuously between two things.
>
> Nothing in the specification or the prosecution history supports such narrow readings, and no testimony was offered to suggest that these narrow interpretations are the correct meaning to one skilled in the art. Consulting the claim language again, the "between" requirement may be satisfied even if a component extends beyond the specified boundaries. In the same way, the "in" requirement may be met by a component which is located, at least in relevant part, in the defined space, as the "within" requirement may be met by a component which is located, at least in relevant part, within the defined area.

*Id.*

Here too, Defendants offer no justification for construing "within" narrowly. Defendants offer no expert testimony or citation to the intrinsic record to support their construction. Looking

---

[1] Pursuant to Federal Circuit Rule 32.1(d) unpublished decisions may be looked to for guidance or persuasive reasoning but do not offer binding precedent.

to that record, however, supports a broad construction of "within" that encompasses Defendants' infringing mirrors. In particular, the specification of the '174 Patent equates "within" to "behind." *See* Dkt. 1-1 ('174 Patent) at 3:7-10. In other words, "within" means dispersed among or bordering. It is an indication of proximity rather than physical makeup as Defendants imply. Combined with the instructions earlier in the specification that relational language should be interpreted broadly when used without "directly" and narrowly when used with "directly," Claim 1 must be construed to mean that the LEDs are placed in close proximity to the crystals such that the light emitted from the LEDs illuminates the crystals.

b. <u>Defendants Fail to Support Reading a One-to-One Relationship Into Claim 1</u>

In addition to misreading "within" in Claim 1, Defendants also attempt to interject a requirement that simply is not claimed. Specifically, Defendants assert that there must be a "one to one" relation of crystals to LEDs. *See* Dkt. 18, p. 7. No such relationship is required by Claim 1 or even discussed in the '174 Patent. Rather than looking to the actual claim language, Defendants cherry pick statements from the specification and infer unstated assumptions from Fig. 1 of the '174 Patent. Defendants' assertion is directly contrary to the actual claim language and governing case law. Claim 1 merely requires "a plurality of crystals" and "a plurality of light emitting diodes (LEDs) . . ." Had the inventor wanted there to be a one-to-one relation of crystals to LEDs, that relationship could have been claimed by stating, for example, "a light emitting diode associated with each one of the plurality of crystals." Claim 1, however, requires no such relationship. Quite simply there is no indication that the plurality of crystals must be the same plurality of LEDs.

In *Wanker v. U.S.*, 152 Fed. Cl. 219 (2021), the Court analyzed multiple uses of "plurality" within the same claims to each mean "two or more" but specifically acknowledged that each

4

instance of "plurality" spoke only to its own category of elements. 152 Fed. Cl. 219, 250-51 (2021). The *Wanker* Court noted that a claimed "plurality of merchants" may include a different number of merchants (as long as it is two or more) than the number of the "plurality of comparison data" gathered from among those merchants. *Id.* (noting that the claim language would be satisfied by gathering a single piece of merchant comparison information from each of two or more merchants but also by gathering more information from those same number of merchants).

Likewise, the requirement for a plurality of crystals does not exclude the existence of additional crystals beyond the plurality. Plurality simply means "two or more" and has been consistently construed as such by the Federal Circuit. *See e.g. Helena Labs. Corp. v. Alpha Sci Corp.* 274 Fed. App'x 900, 903 (Fed. Cir. 2008) (holding that no reasonable jury could find infringement of independent claims that required "plurality of stabilizing supports" where accused product included "at most a single stabilizing support."). Defendants acknowledge that there are multiple crystals and multiple LEDs in the infringing mirrors and simply contend that there are more crystals than LEDs. *See* Dkt. 18 at. p. 5-6 (showing images of multiple crystals and multiple LEDS) and p. 8 (". . . there are far more crystals than LEDs"). Thus, even accepting *arguendo* Defendants' requirement for a one-to-one relationship, the infringing mirrors still satisfy that requirement because they merely include a plurality of crystals for which there is the same number of LEDs and a second plurality of unclaimed crystals. This is also consistent with the description in the '174 Patent which, when describing a particular embodiment, notes that while the invention may include a border, a plurality of crystals, a plurality of LEDs, an outlet, a sensor, and a CPU; it "is not limited thereto." Dkt. 1-1 ('174 Patent) at 3:1-3. In other words, the invention may include other elements such as additional, unclaimed crystals.

Because Defendants' mirrors include multiple crystals and multiple LEDs, they literally

satisfy any proper construction of "a plurality of crystals" and "a plurality of light emitting diodes (LEDs)" as recited in Claim 1 of the '174 Patent. Moreover, even if Claim 1 were construed as Defendants request (and contrary to the intrinsic evidence), Defendants' non-infringement position still lacks substantial merit because Defendants fail to consider the doctrine of equivalents. *See e.g.*, *Glaxo Group Ltd. v. Apotex, Inc.*, No. 00-C-5791, 2002 U.S. Dist. LEXIS 26018, at *5 (N.D. Ill. June 10, 2002) (finding likely infringement under doctrine of equivalents and entering injunction) *aff'd* 64 Fed. Appx. 751, 754-55 (Fed. Cir. 2003). Even accepting Defendants' proposed construction, the LEDs in the infringing mirrors perform "substantially the same function in substantially the same way to obtain the same result" as the LEDs claimed in the '147 Patent; and thus, likely infringe under the doctrine of equivalents. *Graver Tank Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605, 608 (1950).

## II. THE '174 PATENT IS VALID

All issued patents are presumed valid and thus any assertion of invalidity must be shown by clear and convincing evidence. *See* 35 U.S.C. § 282. The burden to show invalidity by clear and convincing evidence applies throughout the case, even at the preliminary injunction stage, and extends to each fact upon which the ultimate conclusion of invalidity is based. *See Goss Int'l Ams. v. Graphic Mgmt. Assocs.*, 2010 U.S. Dist. LEXIS 164545, at *94 (N.D. Ill. Jan. 13, 2010) ("Proof of facts offered to defeat the presumption of validity must always be by evidence that is clear and convincing, and this applies to each fact upon which the ultimate conclusion of invalidity is based.") (internal citations omitted). Defendants cite to cases stating that a mere "substantial question" of invalidity or "vulnerability" of the patent is sufficient to defend against a preliminary injunction. *See* Dkt. 18, p. 8 (citing *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed. Cir. 1992); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 1343, 1359 (Fed.

6

Cir. 2001) and *Titan Tire Corp. v. Case Holland, Inc.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009)). That consideration, however, must always be made while mindful of the burden the Defendants will bear at trial – *i.e.*, showing invalidity by clear and convincing evidence. *See Canon Computer Sys. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998) ("a preliminary injunction is determined 'in the context of the presumptions and burdens that inhere at trial on the merits'" quoting *H.H. Robertson, Co. v. U.S. Deck, Inc.*, 820 F.2d 384, 388 (Fed. Cir. 1987)).

Thus, a "substantial question" of invalidity or a showing that a patent is "vulnerable" to an invalidity defense requires showing that the challenger is likely to be able to produce clear and convincing evidence of invalidity. If some portion of the evidence is not clear or convincing, or the combination of evidence is not likely to clearly and convincingly demonstrate invalidity, then the defense "lacks substantial merit" and does not prevent issuance of the injunction. Here, Defendants' have failed to provide clear and convincing evidence, and their invalidity argument lacks substantial merit, at least because 1) Defendants have not clearly shown that the asserted YouTube video even constitutes prior art; and 2) it is not clear what the YouTube video teaches or that it supports the conclusions drawn by Defendants.

Defendants' invalidity argument relies primarily upon a YouTube video with a purported publication date of June 19, 2016. *See* Dkt. 18, p. 9. First, Defendants fail to clearly demonstrate that this reference even constitutes prior art. 35 U.S.C. § 102 excludes certain disclosures from the definition of prior art, including disclosures dated less than one year before the earliest effective filing date of the patent if the disclosure is either A) made by the inventor or someone who obtained the subject matter from the inventor, or B) made after an earlier disclosure from the inventor or someone who obtained the subject matter from the inventor. 35 U.S.C. § 102(b)(1)(A)-(B). These provisions of § 102 were added with the America Invents Act and the transition to a "first to file"

systems instead of a "first to invent" approach. Section 102(b) maintains a limited grace period during which an inventor's own disclosures, and disclosures made after the inventor's own disclosures, will not be used to invalidate her patent.

Pursuant to § 102(b), only disclosures dated more than one year before the patents effective filing date can be definitively and clearly identified as prior art. The '174 Patent has an earliest effective filing date of June 14, 2017; meaning that any disclosures dated after June 14, 2016 – including the YouTube video relied upon by Defendants – are merely *potential* prior art. Given the burden of clear and convincing evidence that Defendants will face, an invalidity argument that relies upon a primary reference that may or may not even be prior art cannot have substantial merit.

Likewise, even if Defendants had established that the cited YouTube video[2] would qualify as prior art, they have similarly failed to support the conclusions they draw from the video. The video in question (identified on page 10 of Defendants' Opposition) contains no dialogue, has no description, and has received no comments. It is merely a video of a mirror with Beethoven's Moonlight Sonata playing in the background. Defendants assert, without support, that the video demonstrates "a plurality of crystals disposed on a front surface of the border." *See* Dkt. 18 at p. 10 (pointing to square shaped elements between apparent LEDs). Again, Defendants have failed to support their distorted construction and failed to consider the actual teachings of the '174 Patent.

The '174 Patent describes "crystals" as being able to "reflect and enhance light emitted from the plurality of LEDs 14." Dkt. 1-1 at 3:8-9. The elements identified by Defendants as purported crystals are opaque. They appear to be little more than square shapes with glitter attached to them:

---

[2] https://www.youtube.com/watch?v=Zj5q9nBZ1p0



Screenshot from approximately the 1:34 mark of the YouTube video showing the opaque squares of glitter between the LEDs.

An opaque object cannot "reflect and enhance" light emitted from behind or beside it. At most, the squares of glitter will merely scatter light that might incidentally hit it. However, the elements identified by Defendants do not even do this. Rather, as shown in the YouTube video, these square elements break up the light from the LEDs to provide discrete points of light separated by dark gaps where the square shapes are located:



Screenshot from approximately the 0:29 mark of the YouTube video.

9

In other words, the elements identified by Defendants cannot be crystals as described and claimed in the '174 Patent. Likewise, the LEDs are not shown in the YouTube video as being "disposed within the plurality of crystals" under either Defendants' improper construction or the proper construction described *supra*. Rather, the LEDs are placed next to the squares of glitter on the same surface as the squares:



Screenshot from approximately the 1:34 mark of the YouTube video showing the LEDs placed next to and on the same surface as the opaque squares of glitter.

Because Defendants have not shown that their invalidity defense is likely to be based on evidence that is clearly and convincingly prior art and further because that evidence is not likely to clearly and convincingly demonstrate "a plurality of crystals" or a "plurality of light emitting diodes (LEDs) disposed within the plurality of crystals," Defendants' asserted defense lacks substantial merit and does not prevent the Cout from entering a preliminary injunction.

### III. DEFENDANTS HAVE FAILED TO REBUT PLAINTIFF'S SHOWING OF IRREPARABLE HARM OR A LACK OF REMEDY AT LAW

Defendants fail to respond to Plaintiff's arguments regarding irreparable harm and the lack of a legal remedy. Instead, Defendants appear to rely upon boilerplate arguments copied over from

a "Schedule A style" suit. For example, at p. 14 of their brief (Dkt. 18), Defendants encourage the Court to dissolve the injunction[3]. No injunction has been entered in this case yet. Thus, there is nothing to dissolve. Rather, the case is before the Court on the initial question of whether to enter injunctive relief. While the difference is nuanced, the errors in Defendants' brief are symptoms of a greater failure; namely, that the brief does not address Plaintiff's actual arguments.

Plaintiff's opening brief was accompanied by a declaration from Plaintiff's CEO, Sason Gabay. Dkt. 7-4 (originally filed under seal). Mr. Gabay outlined how Plaintiff has created a product line under its "GlowGlass" brand and has endeavored to exploit its exclusionary patent rights to develop and expand its market share. *Id.* at ¶¶ 5-6. Mr. Gabay also explained his efforts to monitor and track the market, which has shown that Defendants have diverted substantial sales with their infringing products. *Id.* at ¶¶ 8-9. Notably, Mr. Gabay stated that he has tracked not only Defendants' infringing sales, but also the sales from non-infringing competitors. *Id.* at ¶ 8. In other words, he has specifically accounted for fair competition (through which competitors may make sales without creating actionable harm to Plaintiff) in contrast to infringement (through which Defendants tortiously garner market share that otherwise would come to Plaintiff). Defendants fail to address any of these issues, choosing instead to submit boilerplate responses to a typical "Schedule A style" injunction motion.

Defendants also fail to address the fact that lost customers create ongoing harm that cannot be remedied because online marketplaces direct those customers to the source of the prior purchases. *See* Gabay Declaration (Dkt. 7-4) at ¶ 12. That is, when a customer purchases a product

---

[3] Defendants' brief includes several other illogical references that may be the result of "copy and paste" drafting or perhaps AI hallucinations. *See* Dkt. 18 at pp. 8-9 (setting out the test for obviousness of design patents, despite this case involving a utility patent); p. 12 (analyzing the ornamental features of the purported prior art); and p. 13 (arguing that a non-existent TRO should be vacated).

online, the marketplace records that sale and directs the customer to the same source when the customer explores repeat or replacement sales. *Id.* These redirected sales, which may or may not be infringing, create ongoing harm that cannot be remedied by mere monetary awards for the initial sale. But for Defendants' infringement, the customer would be directed to Plaintiff for future sales (whether embodying the '174 Patent or not) and thus Plaintiff loses that potential future or ongoing customer based on the past infringement. This cannot be remedied by mere monetary damages.

## IV. DEFENDANTS HAVE NOT IDENTIFIED ANY ACTUAL HARM THEY WOULD SUFFER OR DEMONSTRATED WHY A BALANCE TIPS IN THEIR FAVOR

Defendants assert that Plaintiff "cannot meet their burden of showing that the harm it will suffer if the injunction is denied is substantially greater than the harm the Defendant would suffer if the injunction were granted." Dkt. 18, p. 15 (cleaned up). That is the extent of Defendants' argument. The only other sentence they offer states in conclusory fashion that a TRO would harm Defendants' goodwill. *Id.* Defendants fail to explain how the injunction would damage their goodwill or cause any other harm – let alone any harm that would outweigh the harm to Plaintiff. As noted above, in Plaintiff's opening brief, and in the declaration of Sason Gabay, Defendants' infringement has allowed them to garner market share they are not entitled to and has restricted Plaintiff's ability to grow and establish its own brand. *See e.g.* Dkt. 7-4 at ¶¶ 10-11.

Additionally, Defendants conduct after this case was filed further demonstrates why immediate injunctive relief is necessary. First, as noted during the September 19, 2025 hearing, Plaintiff has observed that Defendants appear to be diverting sales to a new seller account under the store name "planet-EC." Defendants assured the Court that they would clarify the relationship or lack thereof between Defendants and "planet-EC" in their response brief. However, Defendants have failed to address this issue. The only reasonable conclusion is that there is a connection between Defendants and "planet-EC" to which Defendants do not want to admit on the record.

Afterall, if there were no such connection (a fact that would seemingly benefit Defendants) there would be no reason to withhold that information from the Court. Conversely, if there is a connection, Defendants efforts to move sales and assets to a new account reinforce the need for prompt injunctive relief, including an asset restraint.

Likewise, Defendants do not argue against an asset restraint or assert that restraining their Amazon accounts would be improper. As outlined in Plaintiff's opening brief, an asset restraint is both justified and within the Court's authority in this case because of the risk that Defendants will remove their assets from the Court's purview and in view of the equitable relief sought by Plaintiff. *See* Dkt 7-1, pp. 12-13 (explaining the need for an asset restraint to account for Defendants' profits and citing support).

## V. THE PUBLIC INTEREST STRONGLY FAVORS AN INJUNCTION

Defendants cite no case law or specific public interest that warrants denying injunctive relief. As noted in Plaintiff's opening brief, the starting point for this analysis is the "strong public policy favoring the enforcement of patent rights." *PPG Indus. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996) (cited at Dkt. 7-1, p. 12). The question then is whether Defendants can point to some "critical public interest" that removes this case from the norm. *Hybritech, v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1998). Defendants have not identified any such interest. Instead, Defendants asserts that because they are highly-ranked sellers, "fair play and competition weigh in favor of the public interest and Defendant." Dkt. 18, p. 15. This is not a fully developed argument, let alone a compelling one. "Fair play and competition" are promoted by enforcing patent rights because a patent is a "special privilege designed to serve the public purpose of promoting the 'Progress of Science and Useful Arts'" *Precision Instrument Mfg. Co. v. Auto Maint. Mach. Co.*, 324 U.S. 806, 816 (1945).

## V. CONCLUSION

Defendants sell several infringing and non-infringing products. Consequently, their businesses will not be substantially interrupted by Plaintiff's requested injunctive relief. In contrast, the presence of the infringing mirrors is preventing Plaintiff from generating and expanding its market share – despite its exclusionary rights under the '174 Patent. Meanwhile, Plaintiff has made a strong showing of likely infringement and Defendants only asserted defenses rely upon errant readings of the '174 Patent, uncompelling potential prior art, and misapplication of the relevant claim language. For these reasons, any defense proffered by Defendants lacks substantial merit and Defendants should be temporarily and preliminarily enjoined from selling the infringing mirrors or moving assets away from the control of this Court.

DATED: October 3, 2025

Respectfully Submitted,

/s/ Benjamin A. Campbell
Edward L. Bishop
ebishop@bdl-iplaw.com
Benjamin A. Campbell
bcampbell@bdl-iplaw.com
James J. Jagoda
jjagoda@bdl-iplaw.com
Brockton D. Ash
bash@bdl-iplaw.com
BISHOP & DIEHL, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
Tel.: (847) 969-9123

*Counsel for Plaintiff, Bling Mirror, LLC*